# Richmond

## CLARENCE DEWEY MOTLEY v. JOHN DOE.

January 19, 1970.

Record No. 7038.

Present, All the Justices.

*Harvey S. Lutins* (*William E. Land*, on brief), for plaintiff in error.

*F. Byron Parker* (*James M. Roe, Jr.; Parker & Lane; Carter & Roe*, on brief), for defendant in error.

SNEAD, C.J., delivered the opinion of the court.

Clarence Dewey Motley, plaintiff, instituted an action against John Doe, an unknown motorist, defendant, to recover damages for personal injuries sustained when the automobile plaintiff was operating was wrecked, allegedly due to the negligent operation of the car driven by defendant. At the conclusion of plaintiff's evidence and again at the conclusion of all the evidence defendant's motions to strike were overruled. The jury returned a verdict for plaintiff in the sum of $10,000. The trial court granted defendant's motion to set aside the verdict and entered judgment for defendant. We awarded plaintiff a writ of error.

The plaintiff's sole assignment of error is that the trial court erred in setting aside the verdict and entering judgment for defendant.

Under well established principles, plaintiff is entitled to have the evidence adduced viewed in the light most favorable to him, and the jury's verdict has resolved any conflicts in the evidence in his favor.

The accident occurred on Friday, May 13, 1966 at approximately 2:30 p.m. on U.S. Highway No. 220 about seven miles south of Clifton Forge just a short distance south of Big Hill Grocery Store located on the west side of the highway. At that point the highway runs generally north and south, curves to the left and slightly downhill proceeding south. The hard surface portion of the highway is twenty-one feet wide and is marked in the center by solid double lines. The shoulder on the east side is about three feet wide and abuts a high "red clay and shale bank". On the west the shoulder is nine and one-half feet wide. It consisted of mud and loose gravel. The weather was cloudy and the surface of the highway was dry. The speed limit was 55 miles an hour, but there was a road sign indicating a maximum safe speed of 45 miles an hour just north of the grocery store.

Shortly before the accident Motley, the plaintiff, departed in his car from Clifton Forge to visit his home in Danville. His friend, Floyd E. Williams, accompanied him and was on the right front seat.

Soon after departure Williams decided to take a "nap" so he "slipped down in the seat" and dozed.

Motley was the only eye witness to the accident. He stated that his vehicle was traveling south between 50 and 55 miles an hour when he approached the curve. He testified: "I saw * * * this car coming around the curve and he just cut right over on my side. The first thought I had was he was going to get back on his side and I didn't even cut my speed. * * * I veered to the right to give him room and it looked like to me he was coming to the right too, coming to my right and so I said, 'I got to get out of his way,' and I whipped it over to the left and I lost control of it then".

State Trooper T. N. Middlecamp testified that tire marks showed that plaintiff's car veered off the hard surface to the right, traveled one hundred thirty-five feet on the shoulder, cut back onto the hard surface and traveled ninety-six feet diagonally across the highway finally striking the bank on the east side. Plaintiff stated that as he cut across the highway the unknown car passed him on his right without contact.

Plaintiff approximated the distance between the two cars at the time he first saw the other car: "in my judgment, I would say in feet, not exactly accurate, but I would say around two hundred and fifty feet anyway". Trooper Middlecamp testified that there were no marks on the highway or shoulder other than those left by plaintiff's car and that there were no skid marks left by the plaintiff's car on the hard surface until the car veered back onto the highway from the shoulder.

In its written opinion the court below indicated three grounds for its decision to set aside the verdict: (1) "The evidence of the plaintiff in this case is incredible and is insufficient to support a verdict in his favor"; (2) plaintiff was guilty of contributory negligence, and (3) there was no sudden emergency and it was error to have instructed the jury on that theory. This appeal involves these questions.

■ "To be incredible, evidence must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ." *Burke* v. *Scott*, 192 Va. 16, 23, 63 S.E.2d 740, 744 (1951). The evidence adduced falls into neither of these categories.

The defendant claims that "considering that both vehicles were

moving towards one another, the plaintiff at a speed of 50-55 miles per hour * * * it will be seen that it is physically impossible for the John Doe vehicle to have passed the plaintiff on the plaintiff's right". And therefore "the plaintiff's evidence in the light of the physical facts is inherently incredible and beyond belief".

The trial court correctly stated in its opinion that by reason of the jury verdict it was established that there was in fact an unknown motorist on plaintiff's side of the road. Further, in relying on the "physical facts" defendant overlooks that there were only two such facts precisely established: that plaintiff traveled one hundred thirty-five feet on the west shoulder and then ninety-six feet diagonally across the highway into the east bank. The balance of the testimony relating to how the accident occurred was an approximation. Plaintiff emphasized that his testimony concerning distances was estimated —"not exactly accurate". The evidence showed that these vehicles passed close to one another. The speed of the John Doe car was not established. In our view the physical evidence does not conclusively demonstrate that the accident could not possibly have happened as related by plaintiff. Thus we cannot say that plaintiff's evidence is inherently incredible and beyond belief.

We proceed next to a consideration of whether plaintiff was, as a matter of law, guilty of contributory negligence.

"Negligence, contributory negligence, and proximate cause are generally questions for the jury. *Spence* v. *American Oil Co.*, 171 Va. 62, 79, 197 S.E. 468; *Steele* v. *Crocker*, 191 Va. 873, 880, 62 S.E.2d 850, 853; 118 A.L.R. 1120.

"We have repeatedly held that if reasonable men may differ as to the conclusion of fact to be drawn from the evidence, or if the conclusion is dependent upon the weight to be given the testimony, a jury is the proper tribunal to decide the question. *Steele* v. *Crocker*, *supra*, 191 Va., at page 880." *Bates, Administratrix* v. *Thompson*, 200 Va. 501, 505, 106 S.E.2d 728, 731 (1959).

Defendant contends, as the trial court concluded, that plaintiff was guilty of contributory negligence. The substance of this contention is that plaintiff's speed was excessive and that, although plaintiff first observed the John Doe vehicle about two hundred fifty feet away, plaintiff took no evasive action for some distance thereafter.

According to Trooper Middlecamp the legal speed limit on the highway was 55 miles an hour. There was also a sign indicating that 45 miles per hour was the maximum safe speed. Plaintiff was

traveling between 50 and 55 miles per hour. The burden was on defendant to prove that plaintiff was negligent and that such negligence was a proximate cause of the accident. His speed did not exceed the legal limit. Whether plaintiff's speed was reasonable under the circumstances was a question for the jury. Further, there was no showing that a lesser speed would have enabled plaintiff to avoid the accident.

■ The defendant argues that plaintiff was negligent, as a matter of law, in failing to stop when he first saw the John Doe vehicle on his side of the highway. Plaintiff testified that when he saw the John Doe car he "released up on the gas", and maintained his course, thinking John Doe would return to his proper lane. When it became apparent to plaintiff that John Doe was going to continue in plaintiff's lane of travel, he took evasive action. As a result of this action plaintiff lost control of his car. The whole incident took place in a matter of 3 or 4 seconds; "quicker than you think". The issue is not whether plaintiff pursued the wisest course of action or whether he acted wisely at all. The sole issue on this point is whether a reasonably prudent man would have reacted the same way under similar circumstances. And we hold that on that issue reasonable men might differ.

We hold therefore that a jury question was presented on contributory negligence.

■ Finally, the trial court concluded that plaintiff was not confronted with a sudden emergency and that it erred in instructing the jury on this theory. In support of this holding defendant points out that plaintiff was two hundred fifty feet from defendant's car when plaintiff first saw it in his lane of travel. He took no evasive action and was therefore partially responsible for the accident.

The testimony and exhibits show there was an embankment or drop-off from the west shoulder of the highway just south of Big Hill Grocery. Plaintiff observed an automobile approaching him in his lane of travel about two hundred fifty feet away. At some point plaintiff took evasive action by pulling off the highway onto the shoulder of his side of the road. Plaintiff testified: "I veered to the right. How much, I don't know. I know I veered to allow him room and I saw he was veering the same way I was, directly in my path * * * I didn't want to go over the bank. I couldn't see beyond the store. I didn't know what kind of bank it was so I hit the other lane. It wasn't anything coming in the other lane and I headed for

that and I lost control, complete control of it when I cut back." Thus, after pulling to his right to avoid the oncoming car, it then appeared to plaintiff that he was headed for an embankment of unknown proportions and that John Doe was still directly in his path. Confronted with this situation, plaintiff swerved to the left and lost control of his car. The entire episode lasted but a few seconds. We have already said that whether a lack of due care by plaintiff contributed to this situation was a question for the jury. Under these facts we hold that a jury question was presented on sudden emergency and it was not error to instruct the jury on that theory.

The judgment appealed from is set aside, the jury's verdict is reinstated, and judgment is here entered thereon.

*Reversed and final judgment.*